IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 30, 2018 Session

IN RE MAYA M., ET AL.

Appeal from the Circuit Court for Knox County
No. 139271      Gregory S. McMillan, Judge

_____

No. E2017-01616-COA-R3-CV
_____

This post-divorce appeal concerns the mother's filing of a petition to find the children dependent and neglected based upon the father's behavior during his co-parenting time. The juvenile court granted the petition and ordered supervised visitation. The father appealed to the circuit court for a de novo hearing, held approximately one year later. The circuit court dismissed the petition, finding that the children were no longer dependent and neglected. The mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

Danny C. Garland, Knoxville, Tennessee, for the appellant, Brandy (Moussa) Grissino-Mayer.

Luke A. Shipley, Knoxville, Tennessee, for the appellee, Mustapha Moussa.

**OPINION**

**I.      BACKGROUND**

Maya (now age 13), Ali (now age 11), and Zaen (now age 9) (collectively "the Children"), were born to Mustapha Moussa ("Father") and Brandy (Moussa) Grissino-Mayer ("Mother"). Mother and Father (collectively "the Parents") divorced, and a permanent parenting plan was established on June 22, 2015. Mother was designated as the primary residential parent, while Father was granted reasonable co-parenting time.

On May 23, 2016, Mother filed a petition in the juvenile court to find the Children dependent and neglected based upon Father's alleged abuse of the Children and his girlfriend during his co-parenting time. She sought to modify the permanent parenting plan and alter the residential schedule. During the pendency of the litigation, she also sought and received an ex parte temporary restraining order, limiting Father to supervised visitation. The case proceeded to a hearing on August 26, 2016, before the juvenile court, which found clear and convincing evidence that the Children were dependent and neglected due to Father's inability to "control his anger with and around" the Children; domestic violence committed against his girlfriend while in the Children's presence; and Father's failure to provide appropriate care and supervision as evidenced by Father leaving the Children in the residence while he argued with his girlfriend for several hours. The court ordered supervised visitation at Father's expense.

Father appealed to the circuit court for a de novo hearing. The hearing was held almost one year later on July 5, 2017. Much of the testimony presented concerned specific incidents of Father's harsh discipline of the Children while he exercised unsupervised co-parenting time from June 2015 through June 2016. The testimony described several incidents in which Father yelled at the Children, pushed them, or otherwise behaved inappropriately toward his girlfriend prior to the filing of the petition. We will not recount each incident here; however, we do note that Maya testified that Father's anger toward her made her feel "unsafe." She agreed that he never physically harmed her. However, she described an incident where he touched her "front privates" when she was six years old. She further claimed that Father often fought with his girlfriend, Shawna, while in her presence.

Zaen testified similarly and described an incident in which Father pushed Shawna. He claimed that he was fearful of Father because he yelled "a lot." He also claimed that Father pushed him and his brother and recounted an incident in which he "almost struck" his head on a bunk bed when Father pushed him toward his brother's bed. He agreed that he was never harmed to the point of requiring treatment from a doctor.

In turn, Father recounted the incidents from his perspective and claimed that the proceedings were brought by Mother in an attempt to retaliate against him. He testified that the Children were often disobedient, called him names, and fought with each other. He asserted that the Children only became more defiant when he attempted to correct them. He agreed that he raised his voice but claimed that he never assaulted them and only yelled when the Children were in danger. He denied ever leaving the Children without supervision and insisted that he had only once used an overnight babysitter. He claimed that the circumstances, including their behavior, had improved since the court ordered supervised visitation. He said that he used the visitations to connect with the

Children through activities such as rock climbing and swimming. He indicated a desire to attend family counseling but denied a need for individual counseling.

Relative to Shawna, Father stated that they married in September 2016 but that she moved out of the residence prior to the finalization of their divorce in February 2017. He agreed that his relationship was "not a good relationship at all."

Father's business associate, Mike Harris, testified that he has spent time with Father and the Children. He confirmed Father's claim that the Children were disobedient and disrespectful. He stated that he did not find Father's behavior concerning but agreed that Father never actually disciplined the Children while in his presence. Similarly, Wafa Sulaiman, who supervised the visitations following the filing of the petition, testified by deposition that she found the Children's behavior disrespectful. She believed that Father behaved appropriately and even suggested that he could have disciplined them more for their disrespectful behavior. Further, she expressed no concern about his ability to safely parent the Children and described a loving relationship between the Children and Father.

The court dismissed the petition, finding that the Children were no longer dependent and neglected. The court explained that while Father's relationship with Shawna was inappropriate and supportive of the juvenile court's finding, the situation was no longer at issue because the relationship ended. The court continued,

> I find this situation is unhealthy, that [Father] does not understand what his behavior has engendered with regard to the attitudes [the Children] have to him[,] and I say attitudes because I think that is as large a component of this as their mental state is.

However, the court found that it could not sustain a finding of dependency and neglect, especially when Mother failed to present expert testimony in support of her claim that the Children suffered from a mental condition as a result of Father's behavior. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.     Whether the court erred in finding that the Children were no longer dependent and neglected.

B.     Whether Father is entitled to attorney fees.

- 3 -

## III.    STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness.  *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  "A determination that a child is dependent and neglected must be supported by clear and convincing evidence."  *In re Emmalee O.*, 464 S.W.3d 311, 323-24 (Tenn. Ct. App. 2015) (internal quotation and citation omitted).  Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable.  *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003).

## IV.    DISCUSSION

### A.

Mother argues that the court erroneously found that the dependency and neglect no longer existed even though Father never admitted his actions or took remedial measures to address his parenting issues or prior acts of domestic violence.  She claims that the court failed to consider Father's past pattern of behavior as an ongoing danger as evidenced by the Children's continued fear.  She further claims that his current behavior should not carry much weight when he is subject to supervised visitation.  Father responds that the court properly examined the facts as they existed on the day of trial.  He claims that his inappropriate behavior toward Shawna was remedied by the divorce, that the Children admitted that they were never subject to physical abuse, and that his behavior toward them was in response to their disobedience.

As pertinent to this appeal, a dependent and neglected child is one whose parent is unfit to properly care for him or her or who is suffering from abuse or neglect.  Tenn. Code Ann. § 37-1-102(b)(13)(B), (G).  Further, abuse exists "when a person under the age of eighteen (18) is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent."  Tenn. Code Ann. § 37-1-102(b)(1).  The dependency and neglect conditions must exist at the time of the hearing, whether before the juvenile court or in a de novo hearing before the circuit court, to sustain the petition.  *Green v. Green*, No. M2007-01263-COA-R3-CV, 2009 WL 348289, at *9 (Tenn. Ct. App. Feb. 11, 2009).  Indeed, the circuit court does not merely review the juvenile court's finding but must make an independent determination of dependency and neglect based upon evidence presented at the de novo hearing.  *Id.*

(providing that a circuit court's decision following a de novo review renders "any findings by the juvenile court about neglect and dependency [] of no effect whatsoever').

Here, the most concerning evidence presented involved the Children's witnessing of Father's domestic violence toward Shawna. Father admitted that his relationship was unhealthy but further testified that the relationship ended approximately five months prior to the hearing before the circuit court. Moreover, no credible evidence was presented to establish that Father was actually unfit to care for the Children or that the Children suffered from abuse or neglect. The incidents involving the Children, while inappropriate as found by the trial court, did not rise to the level of physical abuse, and no testimony was presented to establish that the Children suffered from a mental condition as a result of Father's behavior toward them or Shawna. At best, the Children indicated that they were fearful of him because he yelled at them. Father admitted, and the trial court intimated, that participation in family counseling was likely necessary to address these concerns. However, these concerns do not support a finding of dependency and neglect by clear and convincing evidence. Accordingly, we affirm the dismissal of the petition.

B.

Father claims that he was entitled to an award of attorney fees at trial and is now entitled to an award on appeal pursuant to Tennessee Code Annotated section 36-5-103(c). He further claims entitlement to attorney fees on appeal pursuant to Section 27-1-122. Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

A right to recover attorney fees in custody and child support disputes at trial or on appeal was created in Tennessee Code Annotated 36-5-103(c), which provides,

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or *in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child*, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed

and allowed by the court, before whom such action or proceeding is pending, *in the discretion of such court*.

(Emphasis added.); *see Shofner v. Shofner*, 232 S.W.3d 36, 38-39 (Tenn. Ct. App. 2007) (authorizing an award of attorney fees in a dependency and neglect action between parents bound by a court decree pertaining to custody). Additionally, Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees on appeal when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An award under either statute is in the discretion of the court. In deference to that discretion, we affirm the court's failure to award attorney fees. Exercising our discretion, we respectfully deny any fees on appeal.

## V.    CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Brandy (Moussa) Grissino-Mayer.

_____
JOHN W. McCLARTY, JUDGE

- 6 -